AMATO v OXFORD AREA COMMUNITY SCHOOL DISTRICT NO 7

Docket No. 58951. Argued December 6, 1977 (Calendar No. 3).—Decided June 5, 1978. Rehearing denied 403 Mich 955.

Nancy Amato, who was employed for two years as a probationary school teacher, was placed on a third year of probation by the Oxford Area Community School District Board of Education. Plaintiff sought a writ of mandamus directing that the school board give her tenure on the ground that the school board did not give her written notice that her work was unsatisfactory. The Oakland Circuit Court, Farrell E. Roberts, J., granted summary judgment for the plaintiff. The Court of Appeals, M. F. Cavanagh and Beasley, JJ. (R. M. Maher, P.J., dissenting), affirmed (Docket No. 26002). Defendant appeals. *Held:*

1. Granting a teacher a third year of probation as permitted by the statute is not a final decision. It only continues the "period of trial". The plaintiff was not discharged or told that she would not be rehired. She is entitled to be employed continuously only after the satisfactory completion of the probationary period.

2. The sections of the teacher tenure act controlling the granting of a third year of probation and the discontinuance of the services of a probationary teacher must be read separately. The former is directed towards a continuance of service, the latter towards a discontinuance of service. To add the statutory procedural requirements for the discontinuance of a probationary teacher to those which apply to an extension of a probationary period would require straining out of context the plain words of the statutes. The Court cannot attribute to the Legislature a meaning inconsistent with the act's purpose, which is to grant a third year of probation upon a decision by the board of education that a teacher's work is not entirely satisfactory but that there has been demonstrated some reason to believe that the teacher could improve.

Reversed.

REFERENCES FOR POINTS IN HEADNOTES
[1–3, 5, 6] 68 Am Jur 2d, Schools §§ 152, 153.
[4] 73 Am Jur 2d, Statutes § 250.

Justice Williams, joined by Justice Blair Moody, Jr., dissented. He wrote that:

1. The objective of the teacher tenure act is to protect teachers in the security of their tenure by eliminating capricious and arbitrary policies of local school boards. This objective extends to teachers still in the probationary period. The sections of the teacher tenure act controlling the granting of a third year of probation and the discontinuance of services of a probationary teacher must be interpreted so as to give meaning to both, if at all possible, particularly because they are adjacent and there is no provision in the act by which one section controls the other. There is no physical, rational, or legal reason why a school board cannot advise the State Tenure Commission of its intention to grant a third year of probation and also advise the teacher whether or not the teacher's work has been satisfactory. There is nothing in either provision to prohibit giving the notice required by the other provision.

2. The written notice which must be given to a probationary teacher as to whether his work has been satisfactory also gives the teacher an opportunity to evaluate his career plans and to inform himself how to satisfy the school board's requirements. There may be disagreements between the teacher and his school board which they may never be able to resolve, or a third year of probation may be necessary to resolve them. The statute requires that the written statement be provided before the close of *each* school year to a probationary teacher. The notice must be given to the teacher whether or not the school board elects to grant a third year of probation; otherwise the teacher is entitled to tenure.

70 Mich App 305; 245 NW2d 728 (1976) reversed.

OPINION OF THE COURT

1. SCHOOLS AND SCHOOL DISTRICTS—TEACHER TENURE ACT—PROBA-
   TION—WORDS AND PHRASES.

   The decision of a school board to grant a probationary teacher a third year of probation is not a final decision; it only continues the period of trial and the teacher is entitled to be employed continuously only after the satisfactory completion of the entire probation period (MCL 38.82; MSA 15.1982).

2. SCHOOLS AND SCHOOL DISTRICTS—TEACHER TENURE ACT—PROBA-
   TION.

   The sections of the teacher tenure act controlling a continuance of a teacher's probationary period for a third year and the

discontinuance of the services of a probationary teacher must be read separately (MCL 38.82, 38.83; MSA 15.1982, 15.1983).

DISSENTING OPINION BY WILLIAMS, J.

BLAIR MOODY, JR., J.

3. SCHOOLS AND SCHOOL DISTRICTS—TEACHER TENURE ACT—PROBA-
TION.

*The objective of the teacher tenure act is to protect teachers in the security of their tenure by eliminating capricious and arbitrary policies of local school boards; this objective extends to probationary teachers, and the interpretation of provisions concerning probation must be consistent with the letter and spirit of the act as a whole (MCL 38.71 et seq.; MSA 15.1971 et seq.).*

4. STATUTES—CONSTRUCTION—ADJACENT PROVISIONS.

*Meaning must be given to both of two statutory provisions which are in question, if at all possible, especially where the two provisions are adjacent and the act does not specify that one controls the other.*

5. SCHOOLS AND SCHOOL DISTRICTS—TEACHER TENURE ACT—PROBA-
TION—NOTICE.

*There is no physical, rational, or legal reason why a school board cannot be required to advise the State Tenure Commission of its intention to grant a probationary teacher a third year of probation and also to advise the probationary teacher whether or not the teacher's work has been satisfactory before the end of each school year; there is nothing in the teacher tenure act to prohibit giving both notices as required by two adjacent sections of the act (MCL 38.82, 38.83; MSA 15.1982, 15.1983).*

6. SCHOOLS AND SCHOOL DISTRICTS—TEACHER TENURE ACT—PROBA-
TION—NOTICE.

*Requiring that a school board give a probationary teacher each year a written notice whether his work has been satisfactory and that it give a notice to the State Tenure Commission of its intention to grant a third year of probation not only protects a probationary teacher from arbitrary discharge but also informs the teacher how to make his work satisfy the school board's requirements and permits the teacher to evaluate his career plans if their differences cannot be resolved in three years (MCL 38.82, 38.83; MSA 15.1982, 15.1983).*

*Foster, Swift, Collins & Coey, P.C.* (by *Karen*

*Bush Schneider* and *Lynwood E. Beekman),* for plaintiff.

*Glime, Daoust & Wilds* (by *Raymond G. Glime* and *Ronald R. Tonks)* for defendant.

COLEMAN, J. Plaintiff Nancy Amato was employed as a probationary teacher by defendant Oxford School District during the 1973-1974 and 1974-1975 school years. At the end of the second year, the board of education granted her a third year of probation, notifying her by a letter which said "[t]he reason for placing you on a third year has been discussed with you by your building administrators and these reasons were reviewed at the April 1, 1975[1] board of education meeting".

Plaintiff sued, saying she was entitled to tenure because the board had not given written notice that her work was unsatisfactory. The trial judge granted relief saying the board "failed to adhere to the applicable provisions of the Michigan teacher tenure act when they granted plaintiff a third year of probation".

The Court of Appeals affirmed. 70 Mich App 305; 245 NW2d 728 (1976). We reverse and remand.

I

Two of the Court of Appeals judges agreed that if the board "desired to grant a third year of probation, the statute required written notice to plaintiff that her work had not been satisfactory; otherwise, she was entitled to tenure". Dissenting

---

[1] The discussion of the board of education, the administration, plaintiff, her mother and her union representative actually took place at a special meeting on March 25, 1975, when the matter was tabled. The formal resolution to continue probation was made at a regular board meeting on April 8, 1975 and a letter was sent on the same date to plaintiff and the Michigan teacher tenure commission.

Judge MAHER said that "since the prerequisite for tenure is satisfactory completion of the probation period, and plaintiff's probationary period was legitimately extended to three years, she was not entitled to tenure after completion of two years as a teacher".

During the first two years of employment, "[a]ll teachers * * * shall be deemed to be in a period of probation". MCL 38.81; MSA 15.1981. The sections in dispute are MCL 38.82; MSA 15.1982,

"No teacher shall be required to serve more than 1 probationary period in any 1 school district or institution: *Provided, That a third year of probation may be granted by the controlling board upon notice to the tenure commission."* (Emphasis added.),

and MCL 38.83; MSA 15.1983.

"At least 60 days before the close of each school year the controlling board shall provide the probationary teacher with a definite written statement as to whether or not his work has been satisfactory. Failure to submit a written statement shall be considered as conclusive evidence that the teacher's work is satisfactory. *Any probationary teacher or teacher not on continuing contract shall be employed for the ensuing year unless notified in writing at least 60 days before the close of the school year that his services will be discontinued."* (Emphasis added.)

The board maintains the lower courts erred in saying that a grant of a third year of probation under MCL 38.82 must comply with MCL 38.83 which concerns the dismissal of or failure to rehire a probationary teacher. Plaintiff argues that the lower court decisions are consistent with the statutory framework and legislative purpose of the teachers' tenure act (TTA).

II

What is the purpose of TTA? According to *Rehberg v Board of Education of Melvindale, Ecorse Twp School Dist No 11, Wayne County,* 330 Mich 541, 547, 548; 48 NW2d 142 (1951), it protects "teachers from being discharged or demoted from a continuing tenure except for 'reasonable and just cause' * * * ". The act "places an additional safeguard upon the arbitrary or unreasonable dismissal of teachers and is designed for their protection".

In his dissent to *Munro v Elk Rapids Schools,* 383 Mich 661, 691; 178 NW2d 450 (1970), the present Chief Justice said "the intent of the *entire* act was to eliminate capricious and arbitrary employment policies of local school boards". This protection extends to probationary as well as tenure teachers. Probation is "a period of trial". A teacher who satisfactorily completes probation is entitled to tenure.

This dissent became the majority opinion on rehearing, 385 Mich 618; 189 NW2d 224 (1971), with the majority holding that "under the statute, unless a probationary teacher is notified in writing that his work is *unsatisfactory,* upon completion of his probationary period he is entitled to employment with tenure status".

The parties to the proceeding before us have cited many cases all of which involved a final board action. The teacher was either dismissed or not rehired. However, granting a teacher a third year of probation is not a final decision. It only continues the "period of trial". The Attorney General has held that if the controlling board fails to give timely notice, "a teacher engaged in the second year of employment would have tenure

* * * at the completion of the second year, provided that the controlling board does not require a third year of probation by giving notice to the tenure commission under the act". 2 OAG, 1957–1958, No 3,297, pp 265, 266 (October 15, 1958).

A significant aspect of this situation is that the plaintiff was not discharged or told that she would not be rehired. Her employment was extended although on a probationary and not a tenure basis. She is entitled to "be employed continuously" only "[a]fter the satisfactory completion of the probationary period". MCL 38.91; MSA 15.1991. She has not completed her probation.

This fact distinguishes plaintiff's action from that brought by the teacher in *Wilson v Flint Board of Education,* 361 Mich 691; 106 NW2d 136 (1960). The school board required all new teachers to serve three years probation. During the third year, the teacher was notified that she would be discharged at the end of the year.

Our Court said the "basic problem * * * is the status of [plaintiff] upon the date of the so-called discharge". The state policy as reflected in the TTA "is that the probationary period shall be not three years, but two". A third year of probation can be granted, "but the language of a grant (as opposed to that of a requirement) makes clear that the third year is for the benefit of the teacher, who may not have satisfied the board fully but who may have shown promise nonetheless". The statute does not provide "any foundation for saying that a board may require, in all cases, three years of probation".

In *Wilson,* the Court noted that the board failed to give the teacher any written notice concerning her work, either after the first or second year. The "statute is clear: such failure, it provides, 'shall be

considered as conclusive evidence' that the work is satisfactory". The result was that "the teacher has satisfactorily completed the probationary period" and "is entitled to the status of tenure".

This case is significantly different. Plaintiff Amato was finishing the required two years of probation when she was granted a third; the *Wilson* plaintiff was finishing the third year and was being discharged. This plaintiff received a written notice that the probation was being extended for reasons "discussed with you by your building administrators and * * * reviewed at the * * * board of education meeting" and the tenure commission was notified in accordance with the statute; the *Wilson* plaintiff received no notice.

The *Wilson* Court acknowledged that a teacher's work during the required probation might not warrant dismissal yet might not justify an award of tenure. The third year of probation is for the teacher's benefit. It gives the teacher an extension of the "period of trial" in which to demonstrate that he or she is qualified. Our plaintiff was afforded this extension. Her services were continued but she has not completed her probation and is not entitled to tenure.

### III

Plaintiff urges us to add the requirements of MCL 38.83; MSA 15.1983 for discontinuance of the services of a probationary teacher to those of MCL 38.82; MSA 15.1982 which apply to an extension of a probationary period. To do so would require straining out of context the plain words of the two statutes. Further, we cannot with good conscience attribute to the Legislature a meaning anomalous to the act's purpose and to common understanding, to-wit: to grant a third year of probation.

The linch-pin of a grant of third year probation is a decision by the board of education that her work is not entirely satisfactory but that she has demonstrated some reason to believe she could improve. To require judicially that the board must formally (and publicly) designate plaintiff's work as "unsatisfactory", leaves no room for a conscientious probationary teacher to demonstrate a capability for excellence prior to a public finding which could support a discharge.

The reason for the third-year probation was that which had been discussed with her both by the building administrators and the school board. The written notice was no surprise for she previously had been told of her shortcomings. The record reveals no prejudice to plaintiff. In summary, we find it neither is in plaintiff's best interest nor required by law that her deficiencies be aired publicly or that she be branded in public as an "unsatisfactory" teacher, particularly because "unsatisfactory" does not accurately reflect the finding of the board.

Also, because her services are not to be "discontinued" but, conversely, are to be continued, application of MCL 38.83; MSA 15.1983 requiring 60-day notice of discontinuance of services as "unsatisfactory" makes little sense if applied to third year probationary teachers. MCL 38.82; MSA 15.1982 has to do with time limits for probationary status. MCL 38.83; MSA 15.1983 establishes a procedure whereby probation can be terminated if services are to be *discontinued.* Each section stands alone. There is no overlapping or conflict on the face of the legislation. It is not reasonable for us to interpret conflict into clear statutory language.

Therefore, we find MCL 38.82; MSA 15.1982 and

MCL 38.83; MSA 15.1983 must be read separately. The former is directed towards a continuance of services and the latter towards the discontinuance of services of probationary teachers.

Reverse. No costs, this being a public question.

KAVANAGH, C.J., and LEVIN, FITZGERALD, and RYAN, JJ., concurred with COLEMAN, J.

WILLIAMS, J.

## I. INTRODUCTION

We are asked to decide a question of first impression concerning the Michigan teacher tenure act: specifically, whether a controlling board of education can place a teacher upon a third year of probation, MCL 38.82; MSA 15.1982, without providing the statement whether or not the teacher's work was satisfactory as required in MCL 38.83; MSA 15.1983. The trial court and the Court of Appeals answered in the negative. We agree.

## II. FACTS

Plaintiff, Nancy Amato, was employed by defendants, Oxford Area School Districts (Board), as a probationary teacher during the 1973–74 and 1974–75 academic years.

At a Board meeting on April 8, 1975, the following resolution was made concerning plaintiff:

" 'It is hereby resolved that Nancy Amato be granted third year of probation for the 1975–76 school year. Further, the Board of Education hereby authorized Clyde C. Fischer, Assistant Superintendent, to notify the Michigan Teacher Tenure Commission and the teacher accordingly.' Moved by Buechler, seconded by

Patterson, that Nancy Amato be granted a third year of probation for 1975–76. Carried unanimously."

Following the meeting, a letter was sent to the tenure commission informing it of the Board's action. At the same time, a letter dated April 8, 1975, was sent to plaintiff which stated:

"You are hereby notified that the Oxford Board of Education at its regular meeting held Tuesday, April 8, 1975, adopted a resolution requiring that you serve a third year of probationary teaching status for the 1975–76 school year.

"The reason for placing you on [a] third year has been discussed with you by your building administrators and these reasons were reviewed at the April 1, 1975, Board of Education meeting."

On April 28, 1975, plaintiff sought a writ of mandamus directing that she be granted tenure status. Plaintiff contended that the Board, in placing her on a third year of probation, should have complied with the procedures set forth in MCL 38.83; MSA 15.1983 as well as MCL 38.82; MSA 15.1982. The Board contended that it was only required to follow the provisions of MCL 38.82; MSA 15.1982.

MCL 38.82; MSA 15.1982 states:

"No teacher shall be required to serve more than 1 probationary period in any 1 school district or institution: Provided, That a third year of probation may be granted by the controlling board upon notice to the tenure commission."

MCL 38.83; MSA 15.1983 states:

"At least 60 days before the close of each school year the controlling board shall provide the probationary

teacher with a definite written statement as to whether or not his work has been satisfactory. Failure to submit a written statement shall be considered as conclusive evidence that the teacher's work is satisfactory. Any probationary teacher or teacher not on continuing contract shall be employed for the ensuing year unless notified in writing at least 60 days before the close of the school year that his services will be discontinued."

The trial court found that the provisions "must be considered together when a teacher is granted a third year of probation".

The Court of Appeals held:

"These sections must be considered together. Grant of a third year's probation is not a substitute for the written notice provided in § 3. If the school board desired to grant a third year of probation, the statute required written notice to plaintiff that her work had not been satisfactory; otherwise, she was entitled to tenure." 70 Mich App 305, 307–308; 245 NW2d 728 (1976).

We granted leave to appeal to provide a definitive answer to this question of first impression.

III. PURPOSE OF THE TEACHER TENURE ACT

In *Wilson v Flint Board of Education,* 361 Mich 691; 106 NW2d 136 (1960), this Court, in interpreting what is now MCL 38.83; MSA 15.1983 noted the deplorable conditions which led to the enactment of the teacher tenure act. The Court said:

"The statute above referred to, from which pertinent excerpts were quoted, represents Michigan's participation in a national movement directed towards the reduction of the large turnover in the teaching profession. A study in the Michigan Law Review describes the problem in these terms:

" 'The large turnover in the profession was due in part to certain practices which were widespread throughout the country; among them may be noted discharge (1) because of political reasons, (2) because of nonresidence in the community, (3) in order to make places for friends and relatives of board members or influential citizens, (4) in order to break down resistance to reactionary school policies, and (5) in order to effect economies either by diminishing the number of teachers and increasing the amount of work assigned to those retained, or by creating vacancies to be filled by lower salaried, inexperienced employees. Of these practices the first was exceedingly influential in the growth of the tenure movement, some of the more notorious cases of political dismissal challenging the attention of the public to the injury to professional morale and efficiency resulting from the misuse of the control vested in the administrative agencies. The remedy for such abuses was sought in legislation designed to strip the school boards of their autocratic power and to prescribe for them rules of administrative action which would ensure a greater degree of security to their employees.'

"It is against this background of the evils sought to be cured by statutory enactment that we proceed to an interpretation thereof." 361 Mich 691, 693–694.

It is with these things in mind that we at this time must continue to interpret the teacher tenure act. Without the knowledge that such conditions existed and may now only be prevented by the act, some of us may lose sight of the objective of the act, the protection of teachers in the security of their tenure. These goals also apply to teachers still in the probationary period. In *Munro v Elk Rapids Schools,* 383 Mich 661; 178 NW2d 450 (1970), the present Chief Justice's dissent, which on rehearing became the majority opinion, 385 Mich 618; 189 NW2d 224 (1971), stated:

"We are saying that the intent of the *entire* act was

to eliminate capricious and arbitrary employment poli-
cies of local school boards. This includes the probation-
ary as well as the tenure period of employment." 383
Mich 661, 691.

The interpretation of any section of the act must
be consistant with its letter and spirit, for only
then can we hope to maintain the purpose of the
legislation. With this always in mind, we interpret
the provisions in question.

## IV. Statutory Interpretation

Where two statutory provisions are in question
it is axiomatic that meaning must be given to
both, if that is at all possible. *Borden, Inc v Dep't
of Treasury,* 391 Mich 495, 523; 218 NW2d 667
(1974) (opinion by Williams, J.). This would seem
particularly true with respect to the two statutory
provisions here in question, since they are immedi-
ately adjacent and the statute does not specify
that either section overrules the other.

We are therefore, as a matter of statutory inter-
pretation, in the position that we must require
observance of MCL 38.83's provision for "a definite
written statement as to whether or not his [the
probationary teacher's] work has been satisfac-
tory" along with observance of MCL 38.82's "a
third year of probation may be granted by the
controlling board upon notice to the tenure com-
mission" unless the granting of a third year's
probation pursuant to MCL 38.82; MSA 15.1982 is
incompatible with the school board giving notice to
a probationary teacher as to the satisfactory or
unsatisfactory nature of the teacher's work.

To ask this question is in effect to answer it.
There is obviously no physical, rational or legal
reason why a school board cannot advise the ten-

ure commission of its intention to grant a third year of probation and also advise the teacher whether or not the teacher's work was satisfactory. What is more, there is good logic and policy to observe both MCL 38.82; MSA 15.1982 and MCL 38.83; MSA 15.1983.

MCL 38.82's notice to the tenure commission advises that body that the teacher continuing after the second year is not on tenure as otherwise would be the case. This is useful information and there is nothing in MCL 38.83 to require that it should not be given.

Likewise, MCL 38.83's statement to the teacher of the satisfactory or unsatisfactory nature of his or her work is useful information, and there is no reason in MCL 38.82 why it should not be required.

Observance of MCL 38.83's notice is required because: one, it is physically possible without in any way impinging upon the notice required in MCL 38.82; two, it is supported by logic and good policy; and three, not to observe it fails to give meaning to the clear and simple mandate of MCL 38.83.

One, it is unnecessary to consider whether giving the two notices required by MCL 38.82[1] and MCL 38.83 is mutually incompatible physically, because it obviously is not physically incompatible.

Two, it is worth considering a little more fully why it is compatible to require MCL 38.83's notice when under MCL 38.82 a third year's probation is

---

[1] Compliance with MCL 38.82; MSA 15.1982 alone as contended by defendant would not even require that the teacher be made aware that tenure had not been granted. It is true in this instance that the teacher was informed but without stated reasons, but we do not find it to be the intent of the Legislature to leave to the discretion of the controlling board whether or not to notify the teacher that a third year of probation has been granted instead of tenure.

being granted. The main reason is that the reasons for advising a teacher of the satisfactory or unsatisfactory character of the teacher's work are important, whether the teacher is just finishing the first probationary year, being terminated at the end of the second or being granted a third probationary year.

The written notice which must be given to the teacher in accordance with the requirements of MCL 38.83; MSA 15.1983 performs two functions which are related in addition to the function of preventing arbitrary discharge as contended by my Sister Coleman. The first is to give time to the teacher to consider how best to implement his or her career plans. The second is to inform the teacher as to the character of the teacher's work, so that the teacher will be able to make his or her services acceptable and productive. The relationship between the two functions is actually more evident in instances of a grant of a third year of probation. By understanding the board's view of the character of the teacher's work, the teacher is able to constructively evaluate the situation. On the one hand, the teacher can analyze what he or she must do to satisfy board requirements. On the other hand, he or she can intelligently and realistically decide whether or not it would be useful to undertake to achieve tenure during the third probationary year. In some instances, there may be philosophical or other areas of disagreement between the teacher and the board which cause the teacher to realize that he or she will never be able to satisfy that particular board and therefore the third year of probation would be pointless.

Three, the language of MCL 38.83; MSA 15.1983 requires:

"At least 60 days before the close of *each* school year the controlling board shall provide the probationary

teacher with a definite written statement as to whether or not his work has been satisfactory." (Emphasis added.)

It is impossible to give meaning to that requirement without mandating such notice be given. As already observed there is no physical or policy reason evoked by granting a third year's probation hindering the observance of such a mandate. There is certainly no language in MCL 38.82; MSA 15.1982 precluding it.

## V. CONCLUSION

Proper statutory interpretation requires us to give meaning to the mandatory notice in MCL 38.83; MSA 15.1983 unless doing so is incompatible with the notice required in MCL 38.82; MSA 15.1982. There is no incompatibility whatsoever. Furthermore, there is good reason to require that a teacher be advised as to what a school board believes are that teacher's strengths and weaknesses in anticipation of a third probationary year. This gives the teacher and the board the best opportunity of the teacher's making the third year a success. Or, in the alternative, the teacher can weigh whether, under the circumstances, the chances of a successful third year are good enough to warrant trying the third probationary year rather than something else.

For these reasons, we hold that the notice required in MCL 38.83; MSA 15.1983 must be given whether or not the controlling board elects to grant a third probationary year under MCL 38.82; MSA 15.1982.

Affirmed.

BLAIR MOODY, JR., J., concurred with WILLIAMS, J.